KNOWLTON DURHAM, Respondent, *v.* IDONAH S. PERKINS, Appellant.

First Department, May 17, 1946.

*J. Arthur Leve* of counsel (*Leve, Hecht & Hadfield,* attorneys), for appellant.

*Albert Adams* for respondent.

CALLAHAN, J.  This is an action at law by a former trustee of an *inter vivos* trust against the settlor-beneficiary to recover damages on the theory that the trustee was compelled to resign

because the settlor vilified and abused him to such an extent that it would have been incompatible with the trust relationship for plaintiff to continue to serve. The conduct complained of was that defendant refused to co-operate with plaintiff and pursued a wanton campaign of vilification and gratuitous insults, including such charges as: that plaintiff had " extorted a trust agreement," was " acting behind her back," had told " a deliberate lie," and had procured certain papers from a court in which the litigation was pending by " trick " and as a " bait " for the purpose of luring defendant to her destruction. The complaint alleges that the conduct of defendant was designed to deprive plaintiff of his commissions.

Under the terms of the trust agreement the settlor assigned her interest in various actions and the proceeds thereof to plaintiff and another trustee for the benefit of the settlor after the payment of various claims including the fees of her attorneys. The trustees were granted power to conduct the litigation and to dispose of certain securities involved therein if and when same were recovered. It was agreed that as compensation for their services the trustees jointly might deduct from any money coming into their hands commissions equal to those allowed by law to one testamentary trustee. Either trustee was permitted to resign on giving notice to the settlor and the cotrustee. Plaintiff's cotrustee resigned prior to plaintiff. He does not join in this action.

No accounting was rendered by plaintiff. There is no allegation that he ever obtained possession of any physical assets in the way of trust funds, though the complaint says that plaintiff acquired title in trust to 24,000 shares of stock involved in the causes of action assigned. Plaintiff acted as trustee for about a year and then resigned before the termination of the litigation relating to the stock. Plaintiff says that if defendant had been co-operative he would have acquired physical possession of the trust assets and would have earned commissions in the sum of $15,220, for which sum he seeks judgment.

For the purposes of this appeal we will assume that plaintiff's resignation was proper, due to defendant's misconduct.

Despite this assumption, it is our view that plaintiff did not have such legal right to commissions that interference with the completion of his trusteeship created a cause of action at law for damages. Even if plaintiff had completed the requirements of the trust agreement his right to commissions would be dependent upon a proper accounting as trustee in the absence of a binding agreement of compromise. The settlement of the accounts of a trustee is within the inherent jurisdiction of a court of equity and if plaintiff is entitled to secure compensation

for the services he rendered prior to his resignation, an accounting in equity would seem to be a condition precedent to any such award.

The right of a trustee to compensation for his services was not recognized under the law of England. In this country most of the States have adopted a contrary view largely as the outgrowth of statutory provision creating such right. (2 Perry on Trusts [7th ed.], §§ 904, 917.)

In this State the right of a trustee to compensation is conferred by section 1548 of the Civil Practice Act and section 285-a of the Surrogate's Court Act.

Section 1548 of the Civil Practice Act relates to trusts other than those of testamentary origin. It provides: "Except as otherwise prescribed in regard to a testamentary trustee, a trustee of an expressed trust is entitled to and may retain for his services in such official capacity the following commissions on income and principal * * * ".

The section then specifies the amount of commissions payable under varying circumstances. It is to be noted that compensation is confined to commissions on the income and principal of the trust. As to commissions on certain annual income, there is a provision for retention thereof by the trustee upon furnishing a statement to beneficiaries. While there is no express requirement in the section for an accounting, the right of a trustee of an *inter vivos* trust to compensation is generally held to be dependent upon an accounting in the absence of an agreement settling the amount earned.

Section 285-a of the Surrogate's Court Act relates to the compensation of testamentary trustees. This section expressly limits the right of a testamentary trustee to commissions to the sum allowed by a surrogate on the settlement of the trustee's account.

The provisions of sections 1548 and 285 are to be read together in construing them. (*Farmers' Loan & Trust Co.* v. *Turner,* 242 N. Y. 240, 244.)

In *Matter of Bushe* (227 N. Y. 85) the question presented was whether the estate of Alpheus C. Dwight, a testamentary trustee who had died before the completion of the trust, was entitled to fixed commissions or an amount resting in the discretion of the Surrogate. The Court of Appeals in construing section 285, said: "It is urged that such a trustee who does not continue until judicial accounting is entitled to no compensation; that commissions are a matter of statute and that no provision has been made by the law for such a case. Section 2753 of the Code of Civil Procedure, as amended by chapter 443 of the Laws of 1914 and by chapter 596 of the laws of 1916,

reads: ' On the settlement of the account of any executor, administrator, guardian or testamentary trustee the surrogate must allow to him ' the rates of commissions therein fixed. These words indicate that commissions as a matter of right can only be allowed to an accounting testamentary trustee. * * * As it has been held that a trustee is not entitled to any commissions until allowed by the court (*Matter of Worthington,* 141 N. Y. 9; *Beard* v. *Beard,* 140 N. Y. 260; *Matter of Ziegler,* 168 App. Div. 735; 218 N. Y. 544) and the statute gives the surrogate power to allow commissions only on the settlement of the account of a testamentary trustee, there may be some force in this view that the estate of Alpheus C. Dwight, under these circumstances, was entitled to no commissions.''

The court in the *Bushe* case then went on to discuss two theories relating to the amount of commissions to be paid. The first was that the deceased trustee's representative would be paid a fixed percentage for receiving the trust funds, but nothing on paying them out. The second was that they would be paid a sum entirely in the discretion of the Surrogate or the Supreme Court. The court held that the latter was the proper rule.

A like rule was applied as to a resigning trustee in the earlier case of *Matter of Allen* (96 N. Y. 327). There the trustee had resigned before the completion of his trust, for reasons involving no blame on his part. It was held that compensation could not be claimed by him as of course, but that a court of equity had power to award such sum as it might in its discretion fix within the statutory limits of full commissions, and that such an award was made as a condition of the trustee's discharge.

The general rule as to compensation of a trustee who has not completed administration of his trust is stated in *Matter of Barker* (186 App. Div. 317, 325), as follows: " There has, however, grown up in this State the judicial rule that, when a trustee ceases the performance of his duties as such, prior to complete administration of the trust estate, he is, in the discretion of the court, entitled to reasonable compensation for the services performed.''

The foregoing was cited with approval in *Matter of Bushe* (*supra,* p. 93).

Though *Matter of Barker* was modified in some respects (230 N. Y. 364), the Court of Appeals affirmed the holding of the Appellate Division that testamentary trustees who died before completion of their duties did not become entitled as matter of right to commissions, but that the Surrogate might, in his discretion, make their representatives an allowance not exceeding the statutory rate of commissions.

In *Conger* v. *Conger* (105 App. Div. 589, affd. 185 N. Y. 554) it was said: "The rule is that commissions are not earned until an accounting is had and an allowance thereof made."

While most of the cases cited relate to testamentary trusts, we see no reason for establishing any different rule as to *inter vivos* trusts.

Where an instrument creating a trust provides that the trustee shall have specified compensation for his services, a court of equity will enforce such provision, upon an accounting when the trustee's duties have been properly completed; and where the agreement provides for a reasonable compensation, such a court, in fixing compensation, will not be limited to the statutory commissions. (*Matter of Schell,* 53 N. Y. 263.) However, our attention has been called to no case holding that the right of a trustee to compensation will be judicially enforced in an action at law. We can conceive, however, that such an action might lie, where parties competent to contract have agreed that the trust has been faithfully performed, and that a particular compensation has been earned.

The administration of trusts is the prerogative of courts of equity. Such courts appear to be the only ones to which the parties to a trust can have recourse for redress, in the absence, at least, of an obligation creating a debt, or of an engagement the nonperformance of which may be the subject of damages at law. (2 Perry on Trusts [7th ed.], § 843; *Husted* v. *Thomson,* 158 N. Y. 328, 337.)

Here the contractual engagement was to permit the deduction of the commissions payable to a testamentary trustee. It, of course, contemplated the faithful completion of the trustee's duties. We consider that an action to settle the trustee's accounts would be the only one in which the question of faithful performance, and any claim for compensation earned prior to the complete administration of the trust, might be judicially settled when a dispute exists as to whether compensation is due. That plaintiff never had any physical assets of the trust estate would not alter this requirement for an accounting. (*Green* v. *Brooks,* 81 Cal. 328.)

If plaintiff could sue at law, upon the theory that his contractual rights were interfered with, the factual issues as to the performance of plaintiff's duties, the quantum and value of his services and his right to compensation might become issues for a jury. Such procedure would be foreign to the conception that matters concerning the fulfillment of trust relations are solely within the jurisdiction of courts of equity.

For the reasons indicated we consider the complaint insufficient.

We have not treated this as an action for commissions. In fact, an earlier pleading in this case did proceed upon that theory, but was dismissed, and the order of dismissal was affirmed by this court (269 App. Div. 980). We consider it as an action for malicious interference with contractual rights. We hold that plaintiff did not have such contractual right to commissions that interference therewith would create a cause of action for damages. Having been forced to resign before his commissions were earned, plaintiff's only right would be to apply to a court of equity for compensation in connection with an accounting.

We do not intend to indicate either by the assumption we have made concerning the propriety of plaintiff's resignation, or by any other statement in this opinion, that plaintiff upon an accounting would be entitled to any compensation. We decide only that the present complaint is insufficient.

The order appealed from should be reversed, with $20 costs and disbursements to the appellant, and the motion to dismiss the third amended complaint as insufficient in law, and to vacate the warrant of attachment and the levy thereunder, granted.

PECK, J. (dissenting). The complaint alleges that the defendant, as settlor and *cestui* of a trust of which plaintiff was the trustee, maliciously pursued a campaign of vilification and abuse against plaintiff, accusing him of extortion, lying, acting behind her back, dirty business and luring her to destruction, so that the relationship of confidence and loyalty necessary to the maintenance of a trust disappeared and plaintiff was constrained to resign as trustee.

The action is to recover damages for defendant's wrongdoing. The measure of damages suggested in the complaint is the amount of commission plaintiff would have earned had defendant co-operated and conducted herself with propriety and probity so that plaintiff could complete his performance as trustee. We are not concerned, however, on a motion to dismiss the complaint for failure to state a cause of action, with damages or with plaintiff's demand for damages. The error in the majority opinion, to my mind, is in treating the action as a suit by a trustee for commissions. Although the complaint does claim the amount of commissions the plaintiff would have earned as trustee as the measure of damages, the action is not brought by a trustee for commissions but is brought by one not a trustee for breach of contract in that he was wrongfully forced out as trustee.

The complaint does not allege physical prevention of performance of the trust. The question, therefore, is whether there is any duty of conduct on the part of a settlor-cestui toward a

trustee, the breach of which, in the absence of physical interference, will justify the trustee's resignation and give him a cause of action against the settlor-cestui. The question is novel, but if the cause of action is to be denied it must be on grounds other than its novelty.

There is nothing novel, of course, in the punctilio of conduct which must be observed by a trustee toward his *cestui*. Are the duties of good faith and consideration all one sided? May a person who has created a trust and engaged a trustee render the trust relationship untenable by maliciously vilifying the trustee, without having to answer for breach of trust or breach of contract?

It cannot be doubted that a trust relationship, whatever its business nature, involves personal relations requiring more than usual consideration and co-operation. The law recognizes this in the punctilio to which the trustee is held. It would seem that the relationship implies at least a reciprocal duty on the part of the settlor-cestui of refraining from malicious and wrongful attacks upon the character and conduct of the trustee.

It is hardly a sufficient answer to a trustee, who is the object of the vilification and abuse alleged in this complaint, that he may have an action for slander. Such an action he may have irrespective of trust relationship or contract, and such an action is hemmed about by rules of substantive law and damages which are quite different from those obtaining in an action for breach of contract or malicious interference with contract.

To repeat, however, we are not concerned on a motion to dismiss the complaint with the measure of damages or with whether plaintiff can prove damages. We are concerned only with the question of whether allegations of malicious vilification and abuse of a trustee by a settlor-cestui, undermining the trust and making the trustee's performance virtually impossible, states a cause of action for wrongful conduct, entitling plaintiff to prove damages.

In my opinion, a settlor-cestui owes a duty of good faith and co-operation to a trustee, and may not wrongfully and unjustifiably vilify him and render the trust relationship untenable without answering in an action for damages for her breach.

The order of Special Term, denying the motion to dismiss the third amended complaint should be affirmed.

MARTIN, P. J., DORE and COHN, JJ., concur with CALLAHAN, J.; PECK, J., dissents and votes to affirm, in opinion.

Order reversed, with $20 costs and disbursements to the appellant and the motion granted.