H. G. FISCHER & Co., Plaintiff, *v.* LINCOLN ROCHESTER TRUST COMPANY, Defendant and Third-Party Plaintiff. CECIL J. GOODWIN, Third-Party Defendant.

City Court of Rochester, May 5, 1949.

*Frederick J. Wiedman* for motion.

*Nixon, Hargrave, Middleton & Devans* opposed.

OGDEN, J. Plaintiff, H. G. Fischer & Co., has brought this action against defendant, Lincoln Rochester Trust Company, to recover money damages for breach of contract. Lincoln Rochester Trust Company, defendant and third-party plaintiff, thereafter commenced a third-party action by the service of a summons and complaint upon Cecil J. Goodwin, third-party defendant herein, to recover money damages from such defendant because of an alleged breach of contract. A copy of such third-party complaint was served upon plaintiff, H. G. Fischer & Co. Cecil J. Goodwin, third-party defendant, has not as yet answered. Plaintiff, H. G. Fischer & Co., through this motion, questions the jurisdiction of this court to entertain such third-party action.

In this memorandum I am considering only the practice and procedure applicable to the City Court of Rochester; no question of territorial jurisdiction is involved and no such question is decided. Throughout this discussion it must be borne in mind that the City Court of Rochester is a so-called "inferior" court, a court not of record, a local court, and as such has only such jurisdiction as is conferred upon it by the State Legislature; that the Rochester City Court Act (Rochester City Charter, L. 1907, ch. 755, as amd.) contains no provision authorizing the practice herein involved and that the only authorization therefor is that contained in section 193-a of the Civil Practice Act.

Section 1 of the Civil Practice Act is as follows: "*Short title and application.* This act shall be known as the civil practice act, and, except as otherwise expressly provided, shall apply to the civil practice in all the *courts of record* of the state" (italics mine).

Section 18 of article VI of the Constitution of the State of New York provides "Inferior local courts of civil and criminal jurisdiction may be established by the legislature, but no such inferior local court which has been created since the first day of January, one thousand eight hundred and ninety-five, or is hereafter created shall be a court of record. All inferior local courts now or hereafter established may be regulated or discontinued by the legislature. The legislature shall not hereafter confer upon any inferior or local court of its creation any equity jurisdiction or any greater jurisdiction in other respects than is conferred upon county courts by or under this article; but it may provide that the territorial jurisdiction in civil cases of any inferior or local court now existing or hereafter established in any city or of justices of the peace in cities shall extend throughout the county or counties in which such city may be located. Courts of special sessions and inferior local courts of similar character shall have such jurisdiction of offenses of the grade of misdemeanors as may be prescribed by law, and the legislature may authorize them to try such offenses without a jury."

Section 193-a of the Civil Practice Act furnishes an equitable remedy, as distinguished from a legal one, and there is nothing contained in this section which expressly makes it applicable to courts not of record; yet section 463-a of the Civil Practice Act, authorizing five-sixths jury verdicts, by its own terms applies "to every civil case tried by a court and jury in any court of the state, whether a court of record or not of record,

and whether the provisions of the civil practice act are or are not applicable to such court or to trials by jury held therein.'' The wording of section 463-a indicates that the Legislature itself recognized that the Civil Practice Act does not necessarily apply to every court of the State.

The Rochester City Court Act, a part of the Charter of the City of Rochester, specifies the jurisdiction of and the procedure in the City Court of Rochester and in certain instances has provided special remedies; e. g., section 514 (testimony by deposition before trial), section 515 (guardian ad litem; receipts of moneys), section 517 (security for costs where plaintiff is a nonresident or foreign corporation), and the sections of the act and rules of the court providing for the time within which to answer or otherwise move. The Rochester City Court Act contains no provision that the Civil Practice Act shall be generally applicable to causes or proceedings brought in the City Court of Rochester. To be sure, section 521 of the City Court Act states that the provisions of the Justice Court Act shall apply to the city court except so far as they are inconsistent with the City Court Act; and reference is sometimes made to section 18 of the Justice Court Act which provides " A justice of the peace must hear, try and determine an action or special proceeding brought before him according to law and equity, and for that purpose, where special provision is not otherwise made by law, is vested with the necessary powers possessed by the supreme court ", and the argument advanced that thereby the Civil Practice Act applies with full force and effect to City Court. In my opinion, this argument is not valid and the City Court of Rochester does not thereby acquire any greater jurisdiction than that expressly granted to it by the Legislature; the prohibition contained in the Constitution is controlling.

The question of the applicability of the Civil Practice Act to courts not of record, and the jurisdiction of subject matter of such courts has been the subject of discussion by various courts.

In *Wheatley* v. *Boyce* (165 Misc. 512, 515), one of the judges of the City Court of Rochester states that " So far as matters of practice and procedure are concerned, the Civil Practice Act doubtless does not apply to the courts not of record, except as the acts creating them invite its application.''

In *Hirsch* v. *Albany Sav. Bank* (192 Misc. 505), the Albany City Court held that section 193-a of the Civil Practice Act did not apply to actions in Albany City Court.

In *Pertzon* v. *Lewis* (45 N. Y. S. 2d 395), the City Court of Buffalo held that certain provisions of the Civil Practice Act relating to proceedings supplementary to judgment were an unconstitutional grant of equity jurisdiction to the City Court of Buffalo and were therefore inapplicable to that court.

In *Mason* v. *Metropolitan Life Ins. Co.* (256 App. Div. 118), the court held that an action in the nature of interpleader cannot properly be brought in the City Court of Buffalo and that a grant to that court of such jurisdiction was unconstitutional.

*Nolan, Inc.*, v. *Smith, Inc.* (193 Misc. 877, 880), cited by counsel, is distinguishable from the cases cited above. The court in this case denied a motion to dismiss a third-party complaint, holding that section 193-a of the Civil Practice Act applied to the Municipal Court of the City of New York, but pointed out that " This court is a court of record and the Civil Practice Act applies."

In *Worthington* v. *London Guar. & Accident Co.* (164 N. Y. 81, 90), the court said " It is very clear that the framers of the Constitution intended that not only should the inferior local court be strictly confined to its locality, but that the extent of its jurisdiction should be so limited that there would be no danger of powers being conferred by the legislature that might interfere with the Supreme Court in the exercise of its general jurisdiction throughout the state."

It seems to me that the opinion of the court in *Lewkowicz* v. *Queen Aeroplane Co.* (154 App. Div. 142, affd. 207 N. Y. 290), with its review of the history of the jurisdiction of inferior courts of this State, not only clearly shows the reasons for a distinction between courts of record and those local courts not of record, but furnishes ample authority for holding that courts not of record may not increase, nor have increased, their jurisdiction by implication — even though the implied authority be that of the Civil Practice Act, where that act is not expressly made applicable. At pages 150–153 the court said " The judiciary article was presented by the judiciary committee of the convention, of which Elihu Root was chairman, with an explanatory report, 5,000 copies of which were printed and ordered distributed prior to the discussion, and which was known as document No. 53 in the proceedings of that convention, and may be found at page 461 *et seq*. of volume 2 of the revised record of the convention. Paragraphs 10 and 11 thereof are as follows: ' X. The jurisdiction of County Courts is enlarged to include actions against residents of the county for the recovery of money only

to the amount of $2,000, and the Legislature is prohibited from enlarging it further in such cases * * * XI. Provision has been made for preventing a repetition of the process by which, through constantly enlarging the jurisdiction of local and inferior courts, local rivals of the Supreme Court are built up. The trial of small causes is just as important to the people who have them as the trial of large causes is to others. When a court is organized for the purpose of trying small causes, enlargement of its jurisdiction necessarily withdraws its attention, interest and efforts from its original field of work. Therefore, while we leave power in the Legislature to establish inferior local courts, we provide that they shall not be courts of record, and that the Legislature shall not confer upon them any equity jurisdiction or any greater jurisdiction in other respects than is conferred upon County Courts.' (Vol. 2, p. 463.)

" In opening the debate Mr. Root said (reported at p. 901, vol. 2): ' We have done one other thing, to which I beg to call your attention; that is this: There has been a constant process in this State of enlargement of the jurisdiction of local and inferior tribunals. That is the way in which we found ourselves confronting the situation with four Superior City Courts, which had been gradually built up, one of them during two hundred years, the others during much shorter periods, by the constant addition of jurisdiction, until each one had equal jurisdiction with the Supreme Court within the locality in which it was situated. * * * So, while we destroy by consolidating all these tribunals which have grown to be equal in jurisdiction to the Supreme Court, and leave only one Supreme Court, we prohibit the Legislature from ever enlarging the jurisdiction of local and inferior courts, so that they shall exceed as to the courts now existing, the jurisdiction they now have, and as to any court they may hereafter create, the jurisdiction of the County Courts. We thus keep down to the level of the County Courts local tribunals and useful tribunals, adapted to the performance of specific functions, all courts except the one Supreme Court; and we do that not only for symmetry, not only to avoid the inconveniences to which I have referred of the building up of these rivals to the Supreme Court, but we do it because it gives effect to a principle, and this is the principle. The proper trial of small causes is just as important as the proper trial of large causes. Small causes are just as important to those who have them as large causes are to wealthier men. The great body of the people of the State have only small causes. When a

court is organized for the trial of small causes it ought to attend to its business and try to do it just as well as any other court tries a million-dollar cause. But, if you enlarge the jurisdiction, and give it million-dollar causes to try, it will never attend to the little causes, and you spoil your court for the trial of small causes, and merely add another court to those which try large ones. We propose by this inhibition upon the Legislature, to keep a system of courts in this State which will attend to the proper function of properly trying the small causes, in which the great body of the people are more interested than they are in the large ones.' * * *

" And finally, in the formal address to the people, adopted by the convention and presented as the explanation of its work, appears the following (Vol. 4, p. 1257): ' We have * * * enlarged and defined the jurisdiction of County Courts * * * forbidden the Legislature to further enlarge the jurisdiction of local and inferior courts of its own creation, and in various other ways simplified and strengthened the judiciary system. The general object of the judiciary article, as proposed, is to secure the more speedy, uniform and effective administration of justice throughout the State.' "

I hold that this court has not jurisdiction of a third-party action, and the Civil Practice Act, including section 193-a thereof, does not apply to the City Court of Rochester excepting so much thereof as is expressly made applicable by the Civil Practice Act itself or by the Rochester City Court Act (Rochester City Charter; L. 1907, ch. 755, as amd.).

The motion made by plaintiff, H. G. Fischer & Co., to vacate the service upon it of the summons and complaint entitled " Lincoln Rochester Trust Company, defendant and third-party plaintiff, against Cecil J. Goodwin, third-party defendant " is granted and the complaint or pleading so entitled is dismissed, with $5 costs of motion to plaintiff, H. G. Fischer & Co.